**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **BECKER LOGISTICS, LLC**, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. _____ |
| | ) | |
| **GREGORY MARKS** and | ) | |
| **WEL COMPANIES, INC.,** | ) | |
| | ) | |
| Defendants. | ) | |

**COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF**

Plaintiff, Becker Logistics, LLC, by and through its attorneys, Emerson and Elder, P.C.

complains against Defendants, Gregory Marks and WEL Companies, Inc., as follows:

**Parties and Jurisdiction**

1.     Plaintiff, Becker Logistics, LLC. (hereinafter "Becker"), is an Illinois limited

liability company with a principal place of business at 2198 Gladstone Ct., Glendale Heights,

Illinois 60139.

2.     On information and belief, Defendant, WEL Companies, Inc. (hereinafter "WEL")

is a corporation with a principal place of business at 1625 S. Broadway, De Pere, WI 54115.

3.     On information and belief, Defendant, Gregory Marks (hereinafter "Marks"), is an

individual who resides at 6274 Battlegate Rd., Jacksonville, FL 32258.

4.     This Court has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332,

because there is complete diversity of citizenship between the opposing parties, and because the

amount in controversy, exclusive of interest and costs, exceeds the sum of $75,000.

5.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2), (c)(2), and (d).

## Factual Allegations

### *Mark's Employment At Becker*

6.      Becker is a federally licensed and authorized freight "broker" and operates pursuant to USDOT FMCSA Authority Certificate N. MC-322914, providing shipping services, third-party logistics services, freight brokerage services, truck brokerage services, and supply-chain management services across the United States.

7.      Marks was previously employed by Becker as a National Account Manager from on or about May 6, 2022 through August 31, 2022.

8.      As a National Account Manager it was Marks' job to market and sell Becker's logistics and freight services directly to new and existing customers in the private and public sectors. Marks' primary duties were expanding the scope of Becker's relationship with existing customers; identifying and developing new customers, including from prospects developed through Becker's advertising and marketing efforts; keeping abreast of customer's logistics needs; advising customers and prospects on the products and services offered by Becker; quoting prices for customers; brokering freight and logistics services; and ensuring that customers received and were satisfied with the products or services purchased.

9.      When Marks was at Becker, he had a nationwide sales territory, meaning he could market and sell Becker's products and services to customers anywhere in the United States. Becker gave Marks potential new customers and assigned him a number of existing customer accounts. Marks benefited from Becker's marketing campaigns, which were conducted by targeted communications to Becker's customers and prospects, including those serviced by, or assigned to, Marks.

2

10.     Marks received confidential information from Becker, including, but not limited to, customer and motor carrier lists.

11.     Marks executed an Employment Offer Letter, on or about May 1, 2022, which provided that Marks would receive a $10,000.00 bonus once he completed 6 months of employment at Becker. Marks' Employment Offer Letter is attached hereto and incorporated herein as **Exhibit A**.

12.     Marks was paid and has wrongfully retained the $10,000.00 bonus despite not having been employed at Becker for 6 months in violation of the Employment Offer Letter.

13.     Marks' base salary was over $75,000 annually. (Exhibit A.)

14.     Marks also agreed to certain non-competition, non-solicitation, and non-disclosure covenants owed to Becker, as set forth in the Business Protection Agreement ("BPA") and a Confidentiality and Non-Disclosure Agreement ("NDA") (hereinafter the "Agreements") to Becker, signed by the Parties on May 6, 2022.  A true and accurate copy of the Agreements are attached as **Exhibit B**.

15.     First, the NDA forbids Marks' unauthorized disclosure of Becker's Confidential Information:

> At no time during or after Employee's employment with Company shall the Employee, directly or indirectly, divulge to any person or entity, except as authorized by Company in writing, any of the Confidential Information which may have been received by, disclosed to the Employee, and/or to which the Employee has had access during the course of his/her employment except as it relates to the permissible disclosure of trade secrets pursuant to 18 U.S.C. § 1833(b). (Subsection 1.d).

16.     The BPA states, in relevant part:

> During the Employee's employment with the Company, and for a period of one (1) year following the termination of Employee's employment with the Company (the "Non-Solicitation and NonCompete Period");

i. Employee agrees to refrain from soliciting any Customer of Company, whether directly or indirectly, for his or her own purposes or those of another, whether acting alone or with any other corporation, partnership, proprietorship, limited liability company or other business entity other than Company, or otherwise in any geographic area or locale in which the Company's Customer is located and/or is doing business or performing services customarily performed by Customer as part of its business operations. For purposes of this Agreement, "Customer" means any person or business entity who utilized Company's products or services within two (2) years prior to the termination of Employee's employment with Company and that the Employee had any contact with or any involvement in the development, retention, or servicing of the Customer. (Subsection 2.a.i.)

17. Marks also agreed that the obligations in the Agreements would survive after his employment relationship with Becker ended.

18. Marks agreed that such protections noted above, and the other ones described more fully in the Agreements, were "reasonable in time and in geographic scope," and were "necessary to protect the [Becker's] legitimate and actual business interest and competitive position in the transportation industry" and that breaching these provisions would cause Becker irreparable and continuous harm.

19. Marks agreed that an award of money damages would not be adequate to remedy the harm caused by his breach, and therefore Becker shall be entitled to injunctive relief in order to enforce the terms of the Agreements and prevent the continuation of such harm to Becker.

20. Finally, Marks agreed that the Agreements would be "governed by and construed in accordance with the laws of the State of Illinois and jurisdiction over such disputes shall be exclusively within the Cook County Circuit Court or the U.S. District Court for the Northern District of Illinois." Marks agreed that he would be "responsible for any and all costs and expenses, including attorneys' fees, incurred by the Company in enforcing the terms of th[ese] Agreement[s]."

**Marks' Breach of the Agreements**

4

21. On or about August 31, 2022, Marks' resigned from his position at Becker.

22. In or around September of 2022, Becker discovered and learned that Marks was hired by WEL, a federally licensed and authorized freight "broker" ( USDOT FMCSA Authority Certificate N. MC- 142305), a direct competitor of Becker that offers services that are the same or substantially similar to those offered by Becker.

23. Upon information and belief, Marks has and continues to solicit and induce Becker's customers to forego utilizing Becker's services and to shift business to WEL instead.

24. Becker, by and through its counsel, sent letters to both Marks dated September 22, 2022, and WEL dated October 28, 2022, demanding Marks and WEL cease and desist violations of Marks' post-employment obligations. The letters are attached hereto and incorporated herein as **Exhibit C** and **Exhibit D**, respectively.

25. Following Marks' departure, Becker has lost substantial revenue and profits from Customers which Marks serviced while at Becker.

26. On information and belief, WEL continues to employ and/or utilize Marks and Marks has not complied with his obligations under the Agreements, despite both having received Becker's letters.

### COUNT I – BREACH OF CONTRACT
### (Asserted against Defendant Marks)

27. Becker incorporates and re-alleges paragraphs 1 through 26 as if fully set forth below.

28. Upon information and belief, immediately after his employment with Becker ended, Marks accepted a position at WEL that is the same as or similar to his position at Becker.

29. Upon further information and belief, Marks has solicited Becker's Customers following his departure from Becker.

30.     The Agreements are valid and legally enforceable contracts that Becker and Marks entered into freely without duress.

31.     Becker has adequately performed all its obligations under the Agreements.

32.     In exchange for his commitment to be bound by the Agreements, Marks received adequate and sufficient consideration, including, without limitation, a promise of ongoing employment and continued access to Becker's confidential information and trade secrets and company resources to assist his professional development.

33.     The Agreements are reasonable in scope, and reasonably tailored to protect Becker's legitimate business interests.

34.     Marks breached the Agreements with Becker by soliciting existing customers of Becker prior to the expiration of the one-year restrictive covenant term.

35.     Marks' breach of the Agreements is ongoing, continuing and causing irreparable harm to Becker.

36.     Unless immediately restrained and enjoined, Marks will continue to cause irreparable harm, damage, and injury to Becker for which it has no adequate remedy at law.

37.     As a direct and proximate result of Marks' breach of the Agreements, Becker has suffered and will continue to suffer damages, including the costs and attorneys' fees incurred in this action, in an amount to be determined at trial.

WHEREFORE, Becker respectfully requests that this Court grant Becker the following relief:

a)      Enter a preliminary and permanent injunction restraining and enjoining Marks from any further breach of the Agreements and from soliciting or accepting business

from any of Becker's clients or customers for Becker for the remainder of one year term of the non-compete provision of the Agreements;

b) Award Becker damages in an amount to be determined at trial in lost profits and/or revenue, plus attorneys' fees and costs of bringing this action;

c) Tolling of the restrictions set forth in Marks' Agreements with Becker for an additional year from the date of judgment; and

d) Grant such other relief as this Court deems just and proper.

## COUNT II: TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS
### (Asserted against Defendant Marks)

38. Becker incorporates and re-alleges paragraphs 1-37 as though fully set forth herein.

39. Becker has existing business relationships with its customers and prospective customers.

40. Marks had and has knowledge of these relationships.

41. Marks knowingly and intentionally interfered with Becker's customers, and proposes to continue his interference.

42. Marks' interference is not justified.

43. As a direct and proximate result of Marks' wrongful actions, Becker has suffered and will continue to suffer damages and immediate and irreparable harm until Marks is enjoined from such conduct and ordered not to interfere with Becker's business relationships and expectations.

WHEREFORE, Becker respectfully requests that this Court grant Becker the following relief:

a)  Enter a preliminary and permanent injunction restraining and enjoining Marks from attempting to interfere with Becker's business relationships with its clients or customers;

b)  Enter a preliminary and permanent injunction restraining and enjoining Marks from accepting business from any of Becker's clients or customers whom Marks has solicited after his resignation from Becker;

c)  Award Becker damages in an amount to be determined at trial in lost profits and/or revenue, plus attorneys' fees and costs of bringing this action;

d)  Tolling of the restrictions set forth in Marks' Agreements with Becker for an additional year from the date of judgment; and

e)  Grant any other relief deemed just and appropriate.

## COUNT III: TORTIOUS INTERFERENCE WITH CONTRACT
### (Asserted against Defendant WEL Companies, Inc.)

44.  Becker incorporates and re-alleges paragraphs 1-43 as if fully set forth herein.

45.  Pursuant to the Agreements, Becker has a contractual relationship with Marks.

46.  WEL was aware of the contractual relationship between Becker and Marks by, among other means, virtue of the communications between Becker and WEL.

47.  Despite this knowledge, WEL purposefully and willfully and intentionally interfered with the contractual relationship by inducing Marks to breach his Agreements with Becker.

48.  WEL's interference is not justified.

49.  As a result of WEL's wrongful actions, Marks breached his contractual obligations with Becker.

8

50. WEL has tortiously, willfully, and maliciously interfered with the contractual obligations that Marks owes Becker and with the business relations between Becker and its customers, without any justifiable excuse and in bad faith.

51. Unless restrained and enjoined, WEL's acts will cause irreparable harm, damage, and injury to Becker for which there is no adequate remedy at law

52. As a direct and proximate result of WEL's actions, Becker has suffered past and future damage.

WHEREFORE, Becker respectfully requests that this Court grant Becker the following relief:

a) Enter a preliminary and permanent injunction restraining and enjoining WEL from inducing Marks to breach his contractual obligations owed to Becker and from attempting to interfere with Becker's business relationships with its clients or customers;

b) Enter a preliminary and permanent injunction restraining and enjoining WEL from accepting business from any of Becker's clients or customers, including those whom Marks has solicited after his resignation from Becker and while employed at WEL;

c) Award Becker damages in an amount to be determined at trial in lost profits and/or revenue, plus attorneys' fees and costs of bringing this action;

d) Tolling of the restrictions set forth in Marks' Agreements with Becker for an additional year from the date of judgment; and

e) Grant any other relief deemed just and appropriate.

**COUNT IV: TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS**
**(Asserted against Defendant WEL Companies, Inc.)**

9

53.    Becker incorporates and re-alleges paragraphs 1 through 52 as if fully set forth below.

54.    Becker has business relations with its customers.

55.    WEL was aware of the business relations between Becker and its customers by virtue of the communications between Becker and WEL and/or by disclosure of the relationships by Marks.

56.    Despite this knowledge, WEL purposefully and intentionally interfered with these business relationships by inducing Marks to breach his Agreements with Becker by soliciting Becker's customers and clients.

57.    As such, WEL has tortiously, willfully, and maliciously interfered with the business relations between Becker and its customers, without any justifiable excuse and in bad faith.

58.    Upon information and belief, WEL continues to tortiously, willfully, and maliciously interfere with the business relations between Becker and its customers, without any justifiable excuse and in bad faith.

59.    As a direct and proximate result WEL's actions, Becker has suffered damages in an amount to be determined at trial.

60.    Unless restrained and enjoined, WEL's acts will cause irreparable harm, damage, and injury to Becker for which there is no adequate remedy at law.

WHEREFORE, Becker respectfully requests that this Court grant Becker the following relief:

a)    Enter a preliminary and permanent injunction restraining and enjoining WEL from attempting to interfere with Becker's business relationships with its clients or customers;

10

b)   Enter a preliminary and permanent injunction restraining and enjoining WEL from accepting business from any of Becker's clients or customers, including those whom Marks has solicited after his resignation from Becker and while employed at WEL;

c)   Award Becker damages in an amount to be determined at trial in lost profits and/or revenue, plus attorneys' fees and costs of bringing this action;

d)   Tolling of the restrictions set forth in Marks' Agreements with Becker for an additional year from the date of judgment; and

e)   Grant any other relief deemed just and appropriate.

### COUNT V – BREACH OF CONTRACT
**(Asserted against Defendant Marks)**

61.   Becker incorporates and re-alleges paragraphs 1 through 60 as if fully set forth below.

62.   Becker and Gregory Marks entered into a valid and enforceable contract, as evidenced by Employment Offer Letter, pursuant to Exhibit A.

63.   Becker completed all of its obligations under the terms of the contract.

64.   Marks breached the terms of the agreement with Becker by retaining the $10,000.00 Bonus despite having failed to complete 6 months of employment as required.

65.   Becker has suffered damages as a result of Marks' retention of the $10,000 Bonus under the contract.

**WHEREFORE**, Plaintiff, Becker Logistics, LLC, respectfully requests that this Court enter judgment in its favor and against Defendant, Gregory Marks, in an amount in excess of $10,000.00 based on the unsatisfied bonus compensation and pre-judgment interest on the un-returned amounts pursuant to 815 ILCS 205/2, plus attorneys' fees and costs, and grant such other and further relief that this Court deems necessary and just.

11

## COUNT VI – UNJUST ENRICHMENT /QUANTUM MERUIT
### (Pled in the alternative against Defendant Marks)

66.    Becker incorporates and re-alleges paragraphs 1 through 65 as if fully set forth below.

67.    Becker paid Marks' $10,000.00 for 6 months of his continued employment.

68.    Marks' has unjustly retained $10,000.00 without providing 6 months of continued employment to Becker.

69.    Marks' continues to retain the $10,000.00 to Becker's detriment.

70.    Marks' failure to return the $10,000.00 to Becker violates the fundamental principles of justice, equity, and good conscience.

71.    Marks' refusal to return the $10,000.00 is an unreasonable and vexatious delay of payment pursuant to 815 ILCS 205/2.

**WHEREFORE**, Plaintiff, Becker Logistics, LLC, respectfully requests that this Court enter judgment in its favor and against Defendant, Gregory Marks, in an amount in excess of $10,000.00 based on the unsatisfied bonus compensation and pre-judgment interest on the un-returned amounts pursuant to 815 ILCS 205/2, plus attorneys' fees and costs, and grant such other and further relief that this Court deems necessary and just.

Dated: January 5, 2023

Respectfully submitted,

Becker Logistics, LLC.

By:  ___*/s/ C.J. Compher*_____
          One of its Attorneys

Eric Emerson #6210537
(eric@emersonelder.com

12

C.J. Compher #6329563
(cj@emersonelder.com)
Michael Parrent #6311291
michael@emersonelder.com
Emerson & Elder, P.C.
53 W. Jackson Blvd., Suite 526
Chicago, Illinois 60604
Tel. 312-858-0703