**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| BECKER LOGISTICS, LLC, | ) | |
| | ) | **No. 23 CV 114** |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **Magistrate Judge Young B. Kim** |
| | ) | |
| GREGORY MARKS, WEL | ) | |
| COMPANIES, INC. and CGM | ) | |
| FREIGHT LLC, | ) | |
| | ) | **December 3, 2024** |
| Defendants. | ) | |

**MEMORANDUM OPINION and ORDER**

In this business dispute brought under the court's diversity jurisdiction, Plaintiff Becker Logistics, LLC ("Becker") asserts breach of contract and tortious interference claims against its former employee, Gregory Marks ("Marks"), and market competitors CGM Freight LLC ("CGM") and WEL Companies, Inc. ("WEL"). Before the court is CGM's second motion to dismiss the claims against it pursuant to Federal Rule of Civil Procedure 12(b)(6). CGM asserts that Becker merely parrots the same allegations after the court dismissed an earlier iteration of the same.[1] (R. 39; R. 50.) For the following reasons, CGM's motion is denied:

**Background**

For purposes of ruling on Becker's motion, the court accepts as true all well-pleaded facts in Becker's second amended complaint ("SAC") and draws all

---

[1] The parties have since consented to this court's jurisdiction pursuant to 28 U.S.C. § 636(c). (R. 64.)

reasonable inferences in Becker's favor. *See Lewert v. P.F. Chang's China Bistro, Inc.*, 819 F.3d 963, 966 (7th Cir. 2016). Becker is an Illinois company that provides nationwide shipping, third-party logistics, supply-chain management, and freight and truck brokerage services. (R. 51, SAC ¶¶ 1, 7.) From approximately May 6, 2022, to August 31, 2022, Marks worked for Becker as a National Account Manager. (Id. ¶ 8.) In that role, Marks was responsible for marketing and selling Becker's services to both existing and new customers he identified and developed nationwide and ensuring customer satisfaction. (Id. ¶¶ 9-10.) Marks received confidential information during his employment with Becker—including the lists of Becker's customers and motor carriers—and signed non-disclosure and business protection agreements governed by Illinois law (the "Agreements"), which in part prohibit him from disclosing such confidential information and soliciting Becker's customers with whom he had contact for a one-year period after separating from Becker. (Id. ¶¶ 14-16, 20 & Ex. B.)

Becker alleges that Marks formed direct competitor CGM—which he co-owns—before he resigned from Becker on August 31, 2022, and has been continuously soliciting and inducing Becker's customers to shift business away from Becker and toward CGM despite the Agreements. (Id. ¶¶ 21-24, 26-27.) Becker also alleges that "CGM knew of Marks' [non-disclosure and non-solicit] obligations" under the Agreements because of "Marks' status as a CGM co-owner and Marks' acting on its behalf" and "because Marks was employed at Becker when CGM was formed." (Id. ¶¶ 32, 75.) And according to the SAC, both Marks and CGM "have expressed general

2

contempt towards and criticized the legal obligations contained in" the Agreements, and Becker has lost "substantial revenue and profits" because Marks has continued to solicit its customers with permission from and on behalf of CGM. (Id. ¶¶ 28, 30-31, 33.) Thus, in addition to claims against Marks, Becker asserts claims against CGM for tortious interference with contract (Count VI) and tortious interference with business relations (Count VII). (See generally id.)

## Analysis

A Rule 12(b)(6) motion to dismiss challenges the sufficiency of the complaint, not its merits. *Gibson v. City of Chi.*, 910 F.2d 1510, 1520 (7th Cir. 1990). To survive a Rule 12(b)(6) motion, the complaint must assert a facially plausible claim and provide fair notice of the claim's basis. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Adams v. City of Indianapolis*, 742 F.3d 720, 728-29 (7th Cir. 2014). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

CGM argues that it should be dismissed from this case because Becker fails to sufficiently plead tortious interference claims against it. (See generally R. 56, CGM's Mem.). To state a claim against CGM for tortious interference with contract under Illinois law, Becker must "allege facts sufficient to establish: (1) a valid contract, (2) [CGM]'s knowledge of the contract, (3) [CGM]'s intentional and unjustified inducement of a breach of contract, (4) a subsequent breach of contract caused by [CGM]'s wrongful conduct, and (5) damages." *Webb v. Frawley*, 906 F.3d 569, 577

(7th Cir. 2018). And to state a claim for tortious interference with business relations under Illinois law, Becker must allege: "(1) that it had a business relationship or a reasonable expectation of entering into a valid business relationship; (2) that [CGM] had knowledge of that relationship or expectancy; (3) that [CGM] intentionally interfered, inducing or causing a breach or termination of the relationship or expectancy; and (4) that [Becker] suffered damages as a result." *Timken Gears & Servs., Inc. v. Brad Foote Gear Works, Inc.*, No. 24 CV 60, 2024 WL 3201274, at *2 (N.D. Ill. June 27, 2024).

CGM contends that Becker's claims against it fail for the same reason they failed the first time—that Becker fails to sufficiently allege that CGM intentionally induced Marks to breach the Agreements or intentionally interfered with or caused the termination of Becker's customer relationships. (Compare R. 39, CGM's Mem. (supporting motion to dismiss first amended complaint) with R. 56, CGM's Mem. (supporting motion to dismiss SAC).) In other words, CGM complains that the SAC does not allege any action CGM took to interfere in any relationship. (See R. 56, CGM's Mem. at 3-6; see also R. 60, CGM's Reply at 2 ("There are no specific facts alleged, simply conclusions. What actions did CGM take to induce Marks to breach? What actions did it take to authorize Marks to solicit Becker's customers?"), and 4 (complaining that SAC "does not establish anything more than a passive acceptance of benefits").) Other than to recite black letter law, CGM cites just one case to support its tortious interference with contract argument (discussed below), (R. 56, CGM's Mem. at 4), and no authority to bolster its argument concerning Becker's tortious

interference with business relations claim, (see generally R. 56, CGM's Mem.; R. 60, CGM's Reply). The court finds neither argument convincing and concludes that Counts VI and VII may both move forward against CGM.

To be sure, CGM did not address Becker's allegation that Marks co-owns CGM until its reply brief, and even then CGM insists without support that the allegation "is not, in and of itself, sufficient" to plead the intentional inducement element of either claim without additional allegations about CGM's conduct. (R. 60, CGM's Reply at 3). But drawing all inferences in Becker's favor as the court must at this stage, the court finds that the addition of the co-ownership allegation cures the defects that led to the dismissal of Becker's tortious interference claims as originally pleaded. Indeed, taken together, the allegations that CGM competes directly with Becker and Marks formed CGM while he was working for Becker and owns CGM allow the court to infer that CGM effectively *is* Marks and that CGM can be held liable under a tortious interference theory. After all, a "complaint that alleges the interfere[er] had knowledge of a contract and then placed a contracting party in a position to breach sufficiently pleads intentional inducement." *Wells Lamont Indus. Grp. LLC v. Richard Mendoza & Radians, Inc.*, No. 17 CV 1136, 2017 WL 3235682, at *4 (N.D. Ill. July 31, 2017). And the court can infer CGM's knowledge of the contracts and customer relationships at issue based on the allegations that Marks worked for Becker with the responsibility for cultivating and servicing its customers and formed CGM as one of its owners. *See Symbria, Inc. v. Callen*, No. 20 CV 4084, 2022 WL 60530, at *23 (N.D. Ill. Jan. 6, 2022) (holding for purposes of tortious

interference claim that defendant entity's knowledge of contracts could be inferred from allegation that its board member had also been a senior executive with plaintiff). Moreover, the court agrees with Becker that these allegations coupled with the allegation that CGM is Becker's direct competitor permit the inference that "CGM possessed the same intent as its owner, Marks"—that is, "to boldly disregard [the Agreements] and reap the benefits to Becker's detriment" and to poach Becker's customers as its own. (R. 59, Pl.'s Resp. at 4-5); *see also Aon PLC v. Infinite Equity, Inc.*, No. 19 CV 7504, 2021 WL 4034068, at *18 (N.D. Ill. Sept. 3, 2021) (finding sufficient to plead intentional inducement allegations that defendants were aware of non-solicitation agreements and formed competing venture to funnel business from plaintiff and toward themselves).

Despite CGM's urging, the Seventh Circuit's decision in *Webb v. Frawley*, 906 F.3d 569 (7th Cir. 2018), does not change this analysis because that case is factually inapposite. There, an employee sued his former supervisor for tortious interference with his employment contract, alleging that the supervisor encouraged him to pursue a particular book of business in violation of company policy to save the supervisor's own professional reputation, and that the employee did so unwittingly, resulting in his termination. *Id.* at 574-75. The court found that the employee failed to state a tortious interference claim because he had not alleged that the supervisor intended to cause his termination or that the supervisor participated in the termination decision. *Id.* at 579-80. Instead, according to the complaint, the supervisor's motivation was solely to save his own job. *Id.* at 575, 579. The facts in *Webb* are thus

6

easily distinguished from the "competing venture" scenario here, in which the individual defendant (Marks) and competing entity he formed and co-owns (CGM) are essentially one and the same and allegedly share a common goal—to steal Becker's customers for CGM's financial gain in violation of the Agreements. *See Symbria, Inc.*, 2022 WL 60530, at *21 (distinguishing *Webb* and finding sufficient allegation that defendants were aware of non-compete and "worked together to form a competing venture" and "take business away" from plaintiff). In short, while Becker still must prove these allegations, they are adequate to allow the claims against CGM to proceed.

## Conclusion

For the foregoing reasons, CGM's motion to dismiss Counts VI and VII is denied.

ENTER:

Young B. Kim
United States Magistrate Judge